ened by the fact that the parcel conveyed was for a mill site, which necessarily included the water in the creek required for its full enjoyment.

I, therefore, dissent from the conclusion reached by Mr. Justice SCOTT, and vote to affirm the order appealed from.

---

PETERSON v. OCEAN ELECTRIC RY. CO.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

1. STREET RAILROADS (§ 98*)—INJURIES TO TRAVELERS—CONTRIBUTORY NEGLIGENCE.

Plaintiff was injured by being struck by a street car as she was crossing a 35-foot boulevard, on which the railway was operated. The car was running on the south track, the south rail of which was 10 feet from the curb, the distance between the rails being 5 feet. Plaintiff left the southerly curb and started to cross diagonally, facing the approaching car, and when she left the curb the car was about 160 feet away, running east at a high rate of speed. Plaintiff continued to walk rather rapidly, crossing the tracks diagonally, with her face in the direction the car was coming, but before she had fully crossed the tracks she was struck and injured. *Held*, that she was guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. § 98.*]

2. JURY (§ 12*)—RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW.

Under Const. art. 1, § 2, providing that trial by jury in all cases in which it has previously been used shall remain inviolate forever, but a jury may be waived by the parties in all civil cases in the manner prescribed by law, the right of jury trial is preserved in actions at common law, so that, if there is any question of fact to be tried in such actions, it must be tried by a jury, unless one is waived.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 27–34, 82, 99, 101, 103; Dec. Dig. § 12.*]

3. APPEAL AND ERROR (§ 1177*)—DISPOSITION OF CAUSE—REVERSAL—DISMISSAL—APPELLATE DIVISION—JURISDICTION.

Const. art. 6, § 2, provides that the Appellate Division shall have jurisdiction previously exercised by the General Term of the Supreme Court, "and such additional jurisdiction as may be conferred by the Legislature." Code Civ. Proc. § 1317, as amended by Laws 1912, c. 380, provides that a court shall render judgment of affirmance or reversal, and final judgments on the right of any or all parties according to law, except where it may be necessary or proper to grant a new trial, when it shall do so, and when a trial has been before a jury, the judgment of the appellate court must be rendered, either on special findings of the jury or on the general verdict, or on a motion to dismiss the complaint, or to direct a verdict, and that after hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. *Held*, that where, in an action at law for injuries, it appeared from plaintiff's own case as a matter of law that she had failed to show herself free from contributory negligence, and for that reason the case should have been dismissed at the trial, the Appellate Division had jurisdiction on reversal to dismiss the complaint, and was not required to remand the cause for a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. § 1177.*]

Laughlin, J., dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Mae I. Peterson against the Ocean Electric Railway Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

William C. Beecher, of New York City, for appellant.

Louis Steckler, of New York City, for respondent.

SCOTT, J. The plaintiff was very seriously injured in consequence of a collision with a trolley car owned and operated by defendant. The accident happened at about 7 o'clock in the morning on September 1, 1909, upon a road described as the "Boulevard near the Village of Rockaway Beach." The plaintiff was living in a settlement known as Tent City, lying between the boulevard and the ocean. The boulevard was a long street or road and, at the place where the accident happened, was partially built up on each side with small shops and buildings. The plaintiff was seriously injured about the head, one consequence of which was that she was unable, at the trial, to recall any of the circumstances attending the accident, although her memory on all other subjects appeared to be excellent. She called witnesses, however, who described the accident and plaintiff's movements immediately before it. At the time of the accident the street was entirely free from vehicular traffic, except the car which collided with plaintiff, and there were very few people moving about. The morning was damp but clear, and the street for a long distance was straight, or nearly so. There was nothing, therefore, to impede plaintiff's view of the approaching car, and nothing to impede the motorman's view of the plaintiff.

The testimony of plaintiff's witnesses shows that the boulevard at the point of the accident was about 35 feet wide; the car was running easterly upon the southerly track, the southerly rail of which was 10 feet from the curb, the distance between the rails being 5 feet. Plaintiff left the southerly curb with the apparent purpose of crossing the boulevard. She started to cross diagonally, facing the car. When she left the curb the car was about 160 feet westerly, running east at a high rate of speed. Plaintiff continued to walk, rather rapidly, crossing, or attempting to cross, the tracks diagonally, still with her face in the direction towards which the car was coming. Before she had fully crossed the tracks the car hit her.

[1] There seems to be no escape from the conclusion that, whether defendant was negligent or not, plaintiff was unquestionably guilty of contributory negligence. She deliberately walked along the track in the face of a rapidly approaching car, which must have been visible to her if she had looked, and, without changing her pace or her course allowed herself to be run down. It may be that, if she retained her memory as to the accident, she would say that she did not see the car until it was actually upon her. But this, even if true, would not absolve her from the charge of negligence. She was bound to look,

and if she had looked, she could not have failed to see the approaching car. If she saw it and made no attempt to avoid it, but relied wholly on the carefulness of the motorman, she was guilty of contributory negligence. Looked at from any angle, and considering only the testimony offered in behalf of the plaintiff, we see no escape from the conclusion that the evidence affirmatively shows that the plaintiff was guilty of contributory negligence. The complaint should have been dismissed at the close of the plaintiff's case in response to defendant's motion to that effect, a motion which was renewed and again denied at the close of the whole case, when the evidence was certainly no more favorable to plaintiff than it had been at the close of her case. Zucker v. Whitridge, 205 N. Y. 50, 98 N. E. 209, 41 L. R. A. (N. S.) 683, Ann. Cas. 1913D, 1250.

Being satisfied that the complaint should have been dismissed upon the undisputed facts, and that, upon a new trial upon the same evidence, it would be the duty of the trial court to dismiss it, the question is presented as to what order we should make. Should we order a judgment of dismissal, or must we go through the formality of sending the case back for a new trial, in order that the trial judge should make the order which inevitably must be made upon such new trial? This presents an interesting and important question, which frequently arises, and which may as well be disposed of now as at another time.

[2] The Constitution of the State provides (article 1, § 2) that:

"The trial by jury in all cases in which it has heretofore been used shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law."

It must therefore be conceded at the outset that in what is known as a common-law action, like the present, the right of trial by jury is preserved; and, if there be any question of fact to be tried, it must be tried by a jury, unless the parties waive their right thereto, and that the court, neither at Trial Term nor in its appellate branch, can usurp the functions of the jury. That conceded fact does not, however, answer the question we have now to consider. That question is whether or not this court, upon undisputed facts, may not only reverse the Trial Term, but may also direct the judgment which those facts require to be entered. Prior to the enactment of the Code of Procedure in 1848, the review on appeal in actions at law was by writ of error, and the reviewing court was only authorized to affirm or reverse the judgment brought before it for review by the writ, and, in case of reversal, to grant a new trial. Until 1848 the rule in equity cases was different, but after the creation of the Supreme Court by the Constitution of 1846, the rule formerly applicable to actions at law was applied to actions both at law and in equity. Benedict v. Arnoux, 154 N. Y. 715, 49 N. E. 326, and cases cited.

[3] Section 2 of article 6 of the Constitution was amended so as to read as follows:

"From and after the last day of December, 1895, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms, and by the General Terms of the Court of Common Pleas for the city and county of New York, the Supreme Court of the city of New

York, the Superior Court of Buffalo and the City Court of Brooklyn, *and such additional jurisdiction as may be conferred by the Legislature.*"

In 1912 the Legislature made an attempt to exercise this power to enlarge the jurisdiction of the Appellate Division by amending section 1317 of the Code of Civil Procedure so that it should read as follows:

"Upon an appeal from a judgment or an order, the Appellate Division of the Supreme Court, or Appellate Term, to which the appeal is taken, may reverse or affirm, wholly or partly, or may modify, the order or judgment appealed from, and each interlocutory judgment or intermediate order, which it is authorized to review, as specified in the notice of appeal, and as to any or all of the parties. *It shall thereupon render judgment of affirmance, judgment of reversal and final judgments upon the right of any or all of the parties, or judgment of modification thereon, according to law except where it may be necessary or proper to grant a new trial or hearing, when it may grant a new trial or hearing. When a trial has been before a jury, the judgment of the Appellate Court must be rendered either upon special findings of the jury or the general verdict, or upon a motion to dismiss the complaint or to direct a verdict.* A judgment, affirming wholly or partly a judgment, from which an appeal has been taken, shall not, expressly and in terms, award to the respondent, a sum of money, or other relief, which was awarded to him by the judgment so affirmed. *After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties.*" Laws 1912, c. 380.

The second, third, and last sentences (indicated by italics) were added by the amendment. The effect of this attempt to enlarge the power of the Appellate Division in equity cases was considered by this court in Bonnette v. Molloy, 153 App. Div. 73, 138 N. Y. Supp. 67. It was not necessary in that case to consider what change, if any, the amendment had effected upon the power of the Appellate Division in actions at law, and the Court of Appeals in reviewing the case expressly reserved that point until it should be directly presented. Bonnette v. Molloy, 209 N. Y. 167, 102 N. E. 559. In that case, which was a suit in equity, this court, upon conflicting evidence, had reversed, a finding of fact by the trial justice, and had directed judgment against the party in whose favor judgment had gone at the Special Term, but had not specifically formulated a finding of act. For this omission, the Court of Appeals deemed it necessary to so modify the judgment directed by this court as to order a new trial, but in the course of its opinion took occasion to comment upon section 1317 of the Code of Civil Procedure in the following words:

"Under the authority conferred by the Constitution in section 2 of article 6, to grant additional jurisdiction to the Appellate Division, we think that the Legislature possesses the power to enlarge the jurisdiction of that tribunal to the extent which has been indicated in this opinion; that is to say, to deal with the evidence in an equity suit as the trial court should have done, and direct judgment accordingly."

This is a decisive and authoritative adjudication as to the power of this court, in equity suits, as the law now stands; the method in which the power should be exercised being merely a matter of detail.

So far as concerns actions at law which have been tried before a jury, it must be conceded at the outset that, if it appears upon appeal, though the judgment appealed from was erroneous, that there remains

an issue of act to be determined before the proper judgment can be rendered, a new trial should be ordered to the end that the disputed question of fact may be passed upon and determined by a jury. So much is required by the constitutional provison preserving inviolate the right of trial by jury. But cases frequently arise wherein, upon the undisputed evidence, the trial court should have disposed of the case without submitting it to the jury at all, either by dismissing the complaint or by directing a verdict for one party or the other. In such a case, is the Appellate Divison empowered to enter the judgment which the trial justice should have ordered, without the useless formality, delay, and added expense involved in sending the case back to Trial Term, with instructions to enter the proper judgment? The language of section 1317 of the Code of Civil Procedure certainly seems to confer such authority. The Appellate Division is authorized, in addition to rendering judgment of affirmance or reversal, to render—

"final judgment upon the right of any or all of the parties or judgment of modification thereon according to law, except where it may be necessary or proper to grant a new trial."

That this provision is intended to apply to actions at law, as well as suits in equity, is made clear by the following sentence:

"When a trial has been had before a jury the judgment of the appellate court must be rendered either upon special findings by the jury, or the general verdict, *or upon motion to dismiss the complaint or to direct a verdict.*"

That is to say, if in an action tried before a jury a motion has been made to dismiss the complaint or to direct a verdict, which should have been granted, but was not, the Appellate Division is authorized to render the judgment which should have been rendered at the trial. It would be difficult to frame a law more clearly giving power to the Appellate Division, in a case where there is no issue as to any material fact, to grant the judgment which should have been rendered at the Trial Term.

Even before the amendment of the Code, in 1912, the Court of Appeals has repeatedly approved the action of the court of intermediate appeal in awarding final judgment upon reversal of a judgment brought before it on appeal, although, of course, such a practice cannot be approved even now in an action at law, if there be left any disputed facts. But when the facts are conceded or undisputed, whether the cause is one triable before a jury or the court without a jury, the Appellate Court has, ever since the adoption of the Code, been authorized to render such a final judgment as the facts require. Edmondston v. McLoud, 16 N. Y. 543; King v. Barnes, 109 N. Y. 267, 16 N. E. 332; Brackett v. Griswold, 128 N. Y. 644, 28 N. E. 365; Fischer v. Blank, 138 N. Y. 669, 34 N. E. 397.

But, it is argued, a new trial should always be granted in a case like the present, because the plaintiff may then be able to offer other evidence, not produced upon the trial already had, which may establish her freedom from contributory negligence. That argument does not impress us favorably. Experience has shown that such a course does not always serve to promote the ends of justice. This court has, of

late years, felt constrained in certain classes of cases wherein it has reversed a judgment because the verdict was against the evidence, or not supported by the evidence, to abstain from pointing out the particular defect or deficiency in the evidence, because it had so often found that upon a new trial witnesses had changed their testimony to fit the criticism of this court, or new witnesses had been produced to supply the deficiencies found in the evidence on the first trial. It may, we think, be taken to be axiomatic that each litigant is entitled to one fair trial of the controversy to which he is a party, but to no more than one. He should not be permitted to speculate upon the amount of evidence required to sustain his case, but should produce upon the trial all the evidence he has that will enable the court to render a just judgment. If he has produced less than all, he has no claim to a second chance to produce evidence which he might have produced in the first instance, but did not. If he discovers material evidence after the trial, of which he had no knowledge at the trial, he has ample remedy in a motion for a new trial upon newly discovered evidence, which will be entertained in a proper case, even after a judgment has been finally affirmed on appeal.

Of course there are cases, not a few, in which the appellate court can see that a new trial ought to be ordered, even though the case is one which should have been disposed of at the trial by a dismissal or a directed verdict, but that is a matter which the Code expressly confides to the judicial discretion of the Appellate Division.

We are therefore of the opinion that the Code (section 1317) expressly authorizes this court, in an action at law which has once been tried before a jury, and in which it appears from the conceded or uncontroverted facts that the complaint should have been dismissed or a verdict directed, and a motion to that effect was made and denied, to direct the entry of the judgment which should have been entered at Trial Term, without imposing upon the parties the futile formality of going back to the Trial Term for the entry of the proper judgment. This authority extends to the case of a directed verdict, as well as to a dismissal, even though it has happened, as it sometimes does, that, owing to a misconception at Trial Term of the law properly applicable to the case, conflicting evidence has been received and even submitted to the jury upon a question of fact which, in the outcome, proves to have been immaterial. The primary object of creating courts and prescribing rules of procedure is to do justice between litigants. Subject to that primary object is the rule that the dispensation of justice should be made as expeditious and as economical of time and money as is possible, and to that end that legal chicanery should be discouraged and useless formalism avoided.

In arriving at this conclusion we have not overlooked the case of Slocum v. New York Life Insurance Co., recently decided by the Supreme Court of the United States, 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879. That was an action upon a life insurance policy, and was brought in the Circuit Court for the Western District of Pennsylvania. A motion was made by the defendant for a directed verdict, which was denied and the cause submitted to the jury, which rendered a

146 N.Y.S.—39

verdict in favor of the plaintiff. Upon appeal to the Circuit Court of Appeals, it was held that, as matter of law, the defendant should have recovered, and that it was error to have denied its motion for a direction. The court thereupon not only reversed the judgment, but also directed a judgment for defendant. It did this under a statute of the state of Pennsylvania which, in different language, confers upon an appellate court similar power to that sought to be conferred upon this court by section 1317 of our Code. Penn. Laws 1905, c. 198, p. 286. The Supreme Court of the United States agreed that the motion for a directed verdict in favor of the defendant should have been granted as matter of law, and sustained the Circuit Court of Appeals in reversing the judgment. It held, however, upon constitutional grounds, that notwithstanding only a question of law was involved, and that a new trial must of necessity result in the direction of a verdict, still the Circuit Court of Appeals had exceeded its power in directing the proper judgment to be entered, and should have ordered a new trial, to the end that there should be a formal verdict upon the record, although it would not be one found by the jury upon conflicting evidence, but one directed by the court as matter of law. This conclusion was arrived at upon a consideration of the seventh amendment to the Constitution of the United States, reading as follows:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

The decision turned upon the construction to be given to the second part of the amendment, as to the re-examination of the facts once tried by a jury, which, as was thought by a majority of the court, confined the practice in such cases to that which prevailed at common law when the seventh amendment was adopted, at which time, as it was said in the opinion, no such thing as an involuntary nonsuit or dismissal of a complaint was known, and upon reversal of a common law judgment upon appeal, it was necessary that a new trial should be had before a jury, if for no other purpose than to have upon the record a formal verdict, even though rendered upon direction, as the basis for a judgment. The highly artificial rules of procedure at common law which prevailed in England when the seventh amendment was adopted have long since been abandoned in that country, and in nearly all of the United States, in favor of a simpler and less technical procedure. In our own state, while we have preserved the inviolability of the right of trial by jury, in this regard conforming to the first part of the seventh amendment to the federal Constitution, we have not irrevocably bound ourselves to the ancient rules of procedure at common law by adopting any constitutional provision similar to that contained in the second half of the seventh amendment, upon which the decision in Slocum v. N. Y. Life Ins. Co. turned. That case, therefore, is not an authority upon the question we are now engaged in considering.

To return to the case at bar, we find upon the plaintiff's own case that as matter of law she has failed to show that she herself was free from contributory negligence, and for that reason that her complaint

should have been dismissed at the trial. There is no suggestion that she did not produce on the trial all the available evidence to support her complaint, or that upon a new trial she would be able to produce new evidence to support the deficiency in her proofs. An appropriate situation is therefore presented for exercising the power conferred by section 1317 of the Code of Civil Procedure as we construe it.

The judgment and order appealed from will therefore be reversed, and the complaint dismissed, with costs in all courts to the defendant.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur.

LAUGHLIN, J. I dissent from the dismissal of the complaint, but vote for a new trial for error in allowing the contradiction of the witness Smith as to the speed of the car, and on the ground that the verdict is against the weight of the evidence.

---

### PETERSON v. OCEAN ELECTRIC RY. CO.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

